**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **DARRELL W. HEARD,** <br> **# 370271,** <br><br> Plaintiff, <br><br> v. <br><br> **TONY PARKER,** *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> )    No. 3:17-cv-01248 <br> )    Judge Trauger <br> ) <br> ) <br> ) <br> ) <br> ) |

**M E M O R A N D U M**

Darrell W. Heard, an inmate of the Riverbend Maximum Security Institution in Nashville, Tennessee, brings this *pro se, in forma pauperis* action under 42 U.S.C. § 1983 against Tony Parker, Commissioner of the Tennessee Department of Correction; Centurion of Tennessee, LLC; Dr. Hau La; Shoa Ma, nurse practitioner; and Dr. Thomas Limbird, alleging violations of the plaintiff's civil and constitutional rights. (Docket No. 1). The plaintiff also has filed motions for appointment of counsel (Docket No. 2), to correct docket (Docket No. 5), for jury demand (Docket No. 6), for status of five summons (Docket No. 11), and for status hearing (Docket No. 12).

**I. Motion for Appointment of Counsel**

Along with the filing of his complaint, the plaintiff submitted a motion seeking the appointment of counsel. (Docket No. 2). The Supreme Court has held that "an indigent's right to appointed counsel . . . exists only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 25 (1981). Thus, unlike criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), *aff'd*, 595 F.2d 1227 (6th Cir. 1979); *see Williamson v.*

1

*Autorama, Inc.,* No. 91-5759, 947 F.2d 947 (6th Cir. 1991)(citing *Willett* favorably). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). When deciding whether exceptional circumstances exist, a district court considers the type of case, the ability of the *pro se* litigant to represent himself or herself, and the nature of the factual and legal issues involved. *Id.* at 606.

The plaintiff states that he is a layperson with no understanding of the law, his case is extraordinarily complex, and he cannot afford to hire an attorney. (Docket No. 2 at 1). The plaintiff's circumstances as described are typical to most prisoners and do not suggest anything exceptional in nature. *See Murray v. Giarratano*, 492 U.S. 1, 7 (1989) (*pro se* litigant); *Richmond v. Settles*, 450 Fed. App'x 448, 452-53 (6th Cir. 2011) (indigent litigant); *Debow v. Bell*, No. 3:10-cv-1003, 2010 WL 5211611, at *1 (M.D. Tenn. Dec. 15, 2010) (inmates are typically indigent and untrained, *pro se* litigants). While the plaintiff alleges that he "has time-critical medical conditions (e.g., diabetes, hip/joint deformation, walking inability/restrictions, pain, and stress) which prohibit him from conducting any reasonable self-representation given his incarceration" (*id.*), he does not explain how these medical conditions restrict his ability to prosecute this action. Indeed, the plaintiff has submitted a 169-page detailed complaint and various motions acting *pro se* in which he clearly communicates his ideas. Considering all of the above, the court finds that the plaintiff's circumstances are not exceptional such that the appointment of counsel is necessary at this time. The plaintiff's motion seeking the appointment of counsel (Docket No. 2), therefore, will be denied.

## II. PLRA Screening Standard

The complaint is before the court for an initial review pursuant to the Prison Litigation Reform

Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require

3

us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. Section 1983 Standard

The plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

### IV. Motion to Correct Docket and Motion to Add Jury Demand

Shortly after filing his complaint, the plaintiff filed motions seeking to amend his complaint to "add 5 summons to be served on 5 Defendants" and to add a jury demand. (Docket Nos. 5 and 6).

There appears to be no undue prejudice to the opposing parties by permitting the plaintiff to amend his complaint as requested; the defendants have not been served. The court therefore will grant the plaintiff's motions, and the complaint shall reflect the correct defendants' names and addresses and a jury demand.

### V. Alleged Facts

According to the complaint, while incarcerated at the Riverbend Maximum Security Institution, the plaintiff developed symptoms of scabies in approximately January 2015. He sought diagnosis and treatment, but Defendant Dr. La refused to test the plaintiff for scabies, despite a known outbreak of scabies at the facility. (*Id.* at 3). Dr. La instead prescribed steroids for the plaintiff for a period of twenty consecutive months, insisting to the plaintiff that he suffered from eczema. (*Id.* at 4, 30). According to the plaintiff, the "entire nursing staff begged and pleaded" with Dr. La to discontinue the

4

plaintiff's steroid treatment because of the dangerous potential side effects. (*Id.* at 30). The plaintiff claims that Dr. La "absolutely refused to admit that he was wrong and that 'all' of us were right in saying that I did in fact have the highly contagious and infectious disease of microscopic parasite scabbies [sic]." (*Id.*) The plaintiff ultimately was diagnosed by Dr. Sharon Alberts as having scabies and was successfully treated for scabies. (*Id.*)

The plaintiff alleges that Dr. La's prescribed use of steroids for such a lengthy time caused the plaintif to experience "bone deterioration and asvascular nercrosis issues," including "dead right hip," ball joint, and right femur issues. (*Id.*) The plaintiff states that he is now "crippled and disabled and in constant unbearable pain in [his] right hip, groin, inner right thigh and legg [sic]." (*Id.* at 6). Centurion of Tennessee, LLC ("Centurion") physician prescribed opioids to the plaintiff for his pain, but the plaintiff states that he does not want to be addicted to opioids and "voluntarily made the decision . . . to get off all opioids and narcotic medications even though [his] pain levels are much higher" because he wants to be "fixed" not medicated. (*Id.*)

The plaintiff sought medical attention for his pain in December 2015 from nurse practitioner Shoa Ma. Ma told the plaintiff that Ma was a neurologist in his home country of China and there was nothing wrong with the plaintiff except for old age. (*Id.* at 32). Ma did, however prescribe the plaintiff naproxen and ibuprofen for pain. (*Id.*) Both Ma and La also gave the plaintiff hydrocortisone shots when his hip pain became unbearable. (*Id.*)

The plaintiff is an insulin-dependent diabetic, which he alleges complicates his medical issues. (*Id.* at 5). Dr. Ronald Baker performed hip surgery on the plaintiff on October 18, 2016, but the surgery was unsuccessful. (*Id.*) According to the plaintiff, Dr. Baker recommends that the plaintiff undergo total right hip replacement surgery. (*Id.*) The plaintiff believes that he needs hip replacement surgery to save his femur and leg.

5

The plaintiff alleges that Dr. Thomas Limbird denied and continues to deny the plaintiff needed surgery to save Centurion the cost of the surgery and because Dr. Limbird is prejudiced against inmates. (*Id.* at 6). The plaintiff alleges that Dr. Limbird "is intentionally and negligently allowing [the plaintiff's] right femur to go further into a deteriorated state and placing [the plaintiff] at a much greater risk of losing not only [his] legg [sic] but possibly [his] very life due to any infections that may very well arise due to waiting to[o] long before during the hip replacement procedure or not doing it at all as he said." (*Id.*) The plaintiff states that, during his most recent visit with Dr. Limbird, he asked the plaintiff how long he had before being released from prison. (*Id.* at 9). Dr. Limbird told the plaintiff that "he had no intentions of doing a total right hip replacement on [the plaintiff] because [he] was incarcerated and that they do not ever like to do major surgeries on inmates." (*Id.*)

The plaintiff states that his "primary care taker" Dr. Charles Sidberry has stated that the plaintiff needs a third opinion regarding the hip replacement surgery. (*Id.*) Centurion refuses to permit a third opinion. (*Id.*)

## VI. Analysis

### A. Section 1983 official capacity claims for monetary damages

The plaintiff's § 1983 claims for monetary damages against any individual defendant in his or her official capacity are barred by the Eleventh Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 71 (1989). Thus, any such claims must be dismissed.

### B. Defendant with no alleged personal involvement

Although the plaintiff names Tony Parker as a defendant to this action, the plaintiff has not

6

alleged any specific personal involvement by Parker in the events described in the complaint. A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation, *Miller v. Calhoun Cnty.,* 408 F.3d 803, 827 n.3 (6th Cir. 2005); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), and the plaintiff here has failed to do so with regard to Parker. The plaintiff's claims against Parker are based solely on his role as Commissioner of the Tennessee Department of Correction, and the plaintiff does not allege that Parker had direct participation in health-care decisions regarding any particular inmate, including the plaintiff. Thus, the plaintiff's claims against Parker must be dismissed.

### C. Deliberate indifference to serious medical needs

The Eighth Amendment to the United States Constitution requires that inmates be provided with reasonably adequate food, clothing, shelter, sanitation, recreation, and medical care. *See Grubbs v. Bradley*, 552 F. Supp. 1052, 1119-24 (M.D. Tenn. 1982). The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment. *See Bellamy v. Bradley*, 729 F.2d 416, 419 (6th Cir. 1984).

The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. 97 at 104; *Brooks*, 39 F.3d at 127. A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the

inference, and that he then disregarded that risk." *Id.*

Complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief. *Estelle*, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. *Id.* at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue that his health suffered as a consequence of such alleged denial. *See Thaddeus-X v. Blatter,* 175 F.3d 378, 401 (6th Cir. 1999).

### 1. Dr. Hau La

The complaint alleges that Dr. La was deliberately indifferent to the plaintiff's serious medical needs in violation of the Eighth Amendment. The court assumes for the purposes of the PLRA screening that the medical condition for which Dr. La was treating the plaintiff constituted a "serious medical need." *Rouster*, 749 F.3d at 446.

Although the complaint acknowledges that Dr. La provided the plaintiff with medical care for his symptoms over the course of many months, the complaint alleges that Dr. La knew there was an outbreak of scabies at the facility and willfully refused to test and treat the plaintiff for scabies and instead intentionally subjected the plaintiff to a dangerous course of steroid treatment--over the plaintiff's objection and the objection of La's medical staff–which ultimately caused the plaintiff great harm. These allegations, "if true, would show that the [defendant] being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [the defendant] did in fact draw the inference, and that [the defendant] then disregarded that risk." *Rouster*, 749 F.3d at 446; *see also Paul*

8

*L. Hawkins v. Metro Gov't Nashville,* No. 3:17-cv-01127 (Docket No. 7, Mem. Op. at 9-10)(Trauger, J.)(finding that plaintiff-prisoner stated colorable Eighth Amendment deliberate indifference to medical needs claim against doctor by alleging that defendant willfully refused to acknowledge scabies outbreak at Metro-Davidson County Detention Facility, refused to treat the affected inmates properly or at all, and refused to address and contain the outbreak). Therefore, the court finds that the complaint's allegations against Defendant Dr. La survive the PLRA screening and state a colorable Eighth Amendment claim.

   **2. Nurse practitioner Shoa Ma**

With regard to nurse practitioner Ma, the complaint alleges that he prescribed naproxen and ibuprofen for the plaintiff's pain and gave the plaintiff hydrocortisone shots when his hip pain became unbearable. (*Id.* at 32). Although Ma told the plaintiff that there was nothing wrong with him except for old age (*id.*), Ma provided medical treatment to the plaintiff; the plaintiff simply disagrees with Ma's opinions and treatment.

Although the plaintiff disagrees with the manner in which he was treated, a prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim. Furthermore, even if the plaintiff's medical treatment was allegedly deficient in some manner, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 105-06. Simply put, an inmate is not entitled to the "best" medical treatment available. *Bemer v. Correctional Med. Services*, No. 10-12228, 2012 WL 525564, *7 (E.D. Mich. Jan. 27, 2012)(citing the 5th Circuit).

The plaintiff has not alleged that Ma acted with deliberate indifference to the plaintiff's serious medical needs. Ma did not ignore the plaintiff's complaints; he assisted the plaintiff with pain management by prescribing medication and administering hydrocortisone shots. Consequently, the

9

court finds that the complaint fails to state a colorable deliberate indifference to serious medical needs claim against nurse practitioner Ma, and this claim will be dismissed.

### 3. Dr. Thomas Limbird

With regard to Dr. Limbird, the court assumes for the purposes of the PLRA screening that the medical conditions for which Dr. Limbird was treating the plaintiff constituted "serious medical need[s]." *Rouster*, 749 F.3d at 446. Thus, the plaintiff has satisfied the objective component of a deliberate indifference claim. The plaintiff alleges that Dr. Limbird intentionally has refused and is refusing to perform needed surgery on the plaintiff because Centurion, the health care provider which has contracted with the Tennessee Department of Correction to provide medical treatment to inmates at Riverbend, encourages or requires its employees to limit medical care in order to increase profits. The plaintiff cites numerous instances in which Dr. Limbird told the plaintiff that he did not like to operate on inmates, would not operate on the plaintiff unless "he had a broken bone," and asked the plaintiff when he would be released from custody. (Docket No. 1 at 5, 6, 9). When the plaintiff told Dr. Limbird several times that the physician who performed the plaintiff's most recent hip surgery and the plaintiff' primary care physician recommended the surgery at issue, Dr. Limbird unequivocally told the plaintiff that he would not consider any tests performed by other doctors or any medical recommendations given by those doctors. (*Id.* at 5, 9). These allegations provide a basis upon which it can be reasonably inferred that Dr. Limbird's repeated refusals to perform surgery on the plaintiff were acts of deliberate indifference to the plaintiff's serious medical needs as is required for a constitutional claim of inadequate medical care. *Weeks v. Chaboudy,* 984 F.2d 185, 187 (6th Cir. 1993)(holding that "a determination of deliberate indifference does not require proof of intent to harm."). Thus, the plaintiff has satisfied the subjective component of a deliberate indifference claim.

The court finds that the plaintiff has stated an Eighth Amendment deliberate indifference

medical claim against Dr. Limbird. The claim shall proceed for further development.

### 4. Centurion of Tennessee, LLC

Centurion is the entity responsible for providing medical care to inmates at Riverbend. Because Centurion performs a traditional state function in operating a state prison, Centurion acts under the color of state law. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996). In order for Centurion to be liable, the plaintiff must allege that there is a direct causal link between a policy or custom of Centurion and the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In other words, Centurion may be liable under § 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 Fed. Appx. 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

To hold Centurion liable, the plaintiff cannot rely on the theory of respondeat superior or vicarious liability. *Street*, 102 F.3d at 818. Liability attaches only if Centurion's policies are shown to be the "moving force" behind the plaintiff's injuries. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989). The plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 353-64 (6th Cir. 1993).

Here, liberally construing the *pro se* complaint, the plaintiff alleges that Centurion's policies, including the policy that inmates should not permitted to undergo major surgeries to save money, are responsible for the plaintiff's injuries. Of course, what the plaintiff claims are policies may not be policies and may not have resulted in the deprivation of the plaintiff's constitutional rights. However,

11

these particulars can be sorted out during the development of this case. For purposes of the initial screening of the plaintiff's claims against Centurion required by the PLRA, the court finds that the complaint states non-frivolous Eighth Amendment claims against Centurion.

**VII.    Conclusion**

In conclusion, the court will deny the plaintiff's motion for appointment of counsel (Docket No. 2) and grant the plaintiff's motions to correct docket (Docket No. 5) and for jury demand (Docket No. 6). Having reviewed the complaint pursuant to the PLRA, the court finds that all claims will be dismissed except as follows: the plaintiff's Eighth Amendment claims under § 1983 against Centurion of Tennessee, LLC and Drs. Ha and Limbird. These claims survive the required PLRA screening and will proceed to further development. Additionally, any § 1983 claims for monetary damages against any individual defendant in his official capacity are barred by the Eleventh Amendment. 28 U.S.C. § 1915A.

An appropriate order will be entered.

ENTER this 2nd day of March 2018.

---
Aleta A. Trauger
United States District Judge