IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DARRELL W. HEARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:17-cv-01248 |
| ) | Judge Trauger / Frensley |
| TONY PARKER, Commissioner of T.D.O.C., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon a Motion to Dismiss filed by Defendants Centurion of Tennessee, LLC and Hau La, M.D. pursuant to Fed. R. 12(b)(5) and 12(b)(6), 42 U.S.C. § 1983, and the Tennessee Health Care Liability Act ("THCLA"), T.C.A. § 29-26-101, *et seq.* Docket No. 37. Along with their Motion, Defendants have filed a supporting Memorandum of Law. Docket No. 38. As grounds for their Motion, Defendants argue that Plaintiff's claims against them should be dismissed because Plaintiff failed to effectuate service of process on them since the addresses used were not correct for service of process. *Id*. at 2. Defendants further argue that Plaintiff's claims against them are subject to the THCLA and should be dismissed because Plaintiff failed to comply with the written pre-suit notice requirements of the THCLA and failed to attach a Certificate of Good Faith to his Complaint in violation of T.C.A. §§ 29-26-121 and 29-26-122 respectively. *Id.* Finally, Defendants argue that Plaintiff's claims are time-barred under T.C.A. § 29-26-116(a)(1), and Plaintiff's 2015 claims are similarly time-barred under 42 U.S.C. § 1983. *Id.*

Plaintiff, who is represented by counsel in this matter, has filed a Response in opposition to the instant Motion. Docket No. 45. Attached to his Response, Plaintiff has additionally filed the Declaration of Samantha Kline. Docket No. 45-1. In his Response, Plaintiff argues that Defendants' Motion should be denied because: (1) Plaintiff's claims for deliberate indifference related to his hip condition are not time-barred; (2) Plaintiff's Complaint states a viable Eighth Amendment claim "as the Court has already ruled in its March 2, 2018 Order"[1]; and (3) any defect in service of process has been or can be cured. Docket No. 45. With regard to any defect in service of process, Plaintiff maintains:

> To the extent service of the Defendants was made at the incorrect address, Mr. Heard would request, pursuant to Rule 4(m), that the Court allow Mr. Heard a "specified time" to correct any defects. Mr. Heard further submits that any defects in service were the product of a layperson, proceeding *pro se*, attempting to navigate the byzantine world of Civil Procedure, a subject that confounds many licensed attorneys. As the Court has now appointed legal counsel for Mr. Heard, Plaintiff requests that the Court, alternatively, find that Mr. Heard has shown good cause for his failure (to the extent of any actual defects), and provide Mr. Heard an "appropriate period" to effectuate service. As Rule 4(m) provides for these remedies, the Court has jurisdiction in this matter.

*Id.* at 5.

Addressing the timeliness of his claims, Plaintiff argues that his claims against Dr. La are timely because, although Dr. La had no involvement in Plaintiff's care after February 2, 2016 and

---

[1] The March 2, 2018 Order cited refers to this Court's frivolity review and determination of Plaintiff's in forma pauperis application. *See* Docket Nos. 20, 21. Plaintiff argues that because the Court found that Plaintiff stated a colorable Eighth Amendment deliberate indifference claim for purposes of surviving frivolity review under the PLRA, that determination acts as a res judicata bar on Defendants' Motion to Dismiss such that the Motion must be denied. Docket No. 45, pp. 5-8.

Plaintiff did not file his Complaint until September 12, 2017, "the gravamen of Plaintiff's Complaint relates to the injury *to his hip* that resulted from Defendants' deliberate indifference." *Id.* at 8 (emphasis original). Specifically, Plaintiff maintains:

> Despite diligent efforts, Plaintiff was not aware and could not have been aware that he had developed vascular necrosis from an over-administration of steroids by Dr. La until being informed of such as part of a consult with Dr. Ronald Baker on or about January 10, 2017. It is the date of the consult with Dr. Baker that has bearing on the timeliness of his claims and not, as Defendants suggest, without citation, the date Dr. La stopped working at Riverbend.
>
> To be clear, while Plaintiff has asserted claims of Defendants' deliberate indifference that include actions taken during the time period he suffered from scabies, Plaintiff is *not* suing for having suffered from scabies. Rather, the central injury that forms the basis of Plaintiff's suit is the injury to his hip. While the scabies and steroids bear a relationship in the narrative, Plaintiff's Complaint does not allege that La was using steroids to treat scabies nor does it allege that his hip injury was caused by scabies. In fact, Plaintiff's Complaint describes La's administration of steroids as actions that were taken in lieu of actual scabies treatment in an effort to hide the existence of an outbreak from the prison population - - - actions previously found by this Court to state a claim for deliberate indifference. The actual injury (the hip) that resulted from this deliberate indifference did not manifest until a later time and, until his consult with Dr. Baker, Plaintiff did not and could not know it had been caused by the Defendants' administration of steroids.
>
> Even if it were determined that Plaintiff's claims somehow accrued prior to his consult with Dr. Baker in January 2017, the Complaint sets forth facts sufficient to support a reasonable inference that any delay in filing is a result of Plaintiff's reliance on repeated assurances (including assurances from representatives and contracted healthcare providers of Centurion) that he would be treated for his hip injury and receive the recommended hip replacement.

*Id.* at 9-10 (internal citations omitted; emphasis original).

Plaintiff summarizes:

> Taking all reasonable inferences as true, it is clear that Plaintiff relied on the assurances that he would receive all treatment for the hip injury (a hip replacement) and delayed initiating the grievance process (a prerequisite to filing suit) until it became clear that Centurion would not, in fact, provide the promised treatment. His statute of limitations thus began to run anew, at the earliest, upon receiving the letter dated April 10, 2017 (ECF 1 at 52 (*denying the requested total hip arthroplasty*)) when it became clear that he had been misled and that he would not receive the expected hip replacement. Once it was clear he had been misled, Plaintiff diligently pursued his claims and initiated the grievance process on April 17, 2017. ECF 1 at 29.

*Id.* at 10-11 (emphasis and citations original).

With leave of Court (Docket No. 49), Defendants have filed a Reply (Docket No. 50). In their Reply, Defendants argue that, at the time Defendants filed their Motion to Dismiss, service had not been perfected as to either of them, and that the address on the summons for Dr. La has always been incorrect and remains incorrect, particularly in light of the fact that Dr. La has not worked for Centurion since February 2, 2016. Docket No. 50, p. 1. Defendants concede that, as of the time of the filing of their Reply, Centurion has been served, but they argue that Centurion was not served within the designated time periods set forth in Fed. R. Civ. P. 4(m). *Id.* at 1-2.

As to Plaintiff's contention that this Court has already determined that Plaintiff's Complaint states a viable Eighth Amendment claim, Defendants reply that the *Twombley/Iqbal* standard governing Fed. R. Civ. P. 12(b)(6) motions governs the Prison Litigation Reform Act ("PLRA") screening. *Id.* at 2. Defendants argue that Plaintiff's reliance on non-binding authority from the Second Circuit, Eleventh Circuit, and Western District of Pennsylvania is misplaced because the Middle District of Tennessee has explicitly determined that there is a

4

Case 3:17-cv-01248    Document 52    Filed 08/20/18    Page 4 of 17 PageID #: 451

lower burden for a plaintiff to overcome at the PLRA screening stage than there is to prevail on a plaintiff's claim itself. *Id.* Defendants argue that the March 2, 2018 Order referenced by Plaintiff as support for his assertion that his Complaint states a viable Eighth Amendment claim was the Court's PLRA screening frivolity review, such that Defendants' Motion to Dismiss and the claims contained therein are not barred. *Id.* at 2-3.

Defendants additionally reply that, in light of all the documentation attached to Plaintiff's Complaint and relied upon by him to support his allegations against them, Plaintiff has failed to sufficiently allege that they were deliberately indifferent to his medical needs . *Id.* at 4, *citing* Docket No. 1, pp. 52, 54, 62-69. Specifically, Defendants maintain that, taking the allegations of Plaintiff's Complaint as true, Plaintiff has been receiving medical care throughout the dates listed in the Complaint, including, *inter alia*, receiving x-rays and MRIs for his right hip pain, consultations with orthopaedic surgeons, and a hip decompression surgery. *Id.* Defendants argue that, "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Id.* at 3-4, *citing Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) and *Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir. 1976). Defendants contend, therefore, that Plaintiff's claims are governed by the THCLA and should be dismiss for failure to follow the pre-suit notice requirements set forth in the THCLA. *Id.* at 4-5.

Addressing Plaintiff's assertion that his claims are not time-barred under the discovery rule and the doctrine of equitable estoppel, Defendants argue that Plaintiff's claims must fail because it was Plaintiff himself who refused to undergo the total hip arthroplasty and instead

5

underwent a hip decompression surgery; thus it was his own lack of diligence that caused the delay in filing his lawsuit. *Id.* at 5, *citing* Docket No. 1, pp. 52, 54, 69; and *Redwing v. Catholic Bishop for Diocese of Memphis*, 363, S.W.3d 436, 460 (Tenn. 2012). Additionally, Defendants argue that Plaintiff never asserted that Centurion failed to treat him for scabies such that those claims are barred. *Id.* at 5.

Plaintiff, who was pro se at the time he filed his 169-page Complaint, but who is now represented by counsel, filed this action pursuant to 42 U.S.C. §1983 alleging that Defendants violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. Docket No. 1. Specifically, Plaintiff avers that Defendants were deliberately indifferent to his need for a total right hip replacement surgery, which he needs because his hip deteriorated due to the "massive amounts of steroid[s]" that were prescribed by Defendants for his scabies infection. *Id.* Plaintiff avers that Defendants' prescribing "massive amounts of steroid[s]" constitutes "intentional mishandling" of his scabies infection. *Id.*

As set forth above, Plaintiff clarifies and specifically articulates that although he avers that he needs a total right hip replacement because of an over-prescription of steroids for his scabies infection, he is not alleging or suing for deliberate indifference related to his scabies infection; rather, he is alleging and suing for deliberate indifference related to his hip. *See* Docket Nos. 1, 45.

For the reasons discussed below, the undersigned finds that even if any procedural defects could be cured, Plaintiff's claims could be deemed timely, and Plaintiff could be deemed to have provided constructive notice to Defendants of his claims, taking the allegations of Plaintiff's Complaint as true, Plaintiff simply cannot establish that Defendants were deliberately indifferent

6

to his hip pain, alleged deterioration, or request for a total right hip replacement. Because Plaintiff cannot establish the substantive basis for his claim, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 37) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

## II. Factual Allegations of Plaintiff's Complaint Related to his Hip Treatment

Plaintiff, in his Response to the instant Motion to Dismiss, summarizes the factual allegations of his Complaint that are related to his hip as follows:

> Mr. Heard's 169-page Complaint (ECF 1) raises several allegations of deliberate indifference to serious medical needs under 42 U.S.C. § 1983. Mr. Heard's claims center upon his current need for a total right arthroplasty (hip replacement), which he alleges he needs because of Centurion and Dr. La's intentional mishandling of Mr. Heard's scabies infection. (Complaint at 3, 109). Dr. Ronald baker, an orthopedic surgeon, informed Mr. Heard on January 10, 2017 that Dr. Baker believed Mr. Heard required a hip replacement and that "there is nothing that could cause this much deterioration" to Mr. Heard's hip "other than massive amounts of steroid usage." (*Id.* at 109.) Mr. Heard timely filed suit within one-year from the date of this consult, in which he first discovered that his hip injury was directly caused by Centurion and La's intentional mishandling of his scabies infection through the prolonged misuse of powerful steroids.
>
> . . .
>
> On September 12, 2016, Mr. Heard underwent an MRI that revealed necrosis of the hips. (*Id.* at 63.) Following this MRI, Mr. Heard was referred to Dr. Baker for the above-referenced January 10, 2017 consult. (*Id.* at 65.) At this consult, Dr. Baker referred Mr. Heard "to Dr. Limbird to discuss proceeding with total right hip arthroplasty." (*Id.*) According to the Complaint, Dr. Limbird "refused all medical reports, MRI reports or other medical options. Dr. Limbird rebukes all the facts regarding blood flow issues . . . Dr. Limbird made it very clear . . . there would never be a hip replacement 'because' he did not like operating on incarcerated inmates." *(Id.* at 5.) Further, "Dr. Limbird stated he had 'no intentions' of doing a total right hip replacement . . . because [Mr.

7

Heard] was incarcerated and that they do not ever like to do major surgeries on inmates." (*Id.* at 9.) Mr. Heard alleges that Limbird and Centurion are "intentionally slow walking" him and his "medical crises in order for someone else other than them to be left with the cost, burden, and responsibility." (*Id.* at 10.)

Docket No. 45, pp. 1-3.

As to the specific allegations in Plaintiff's Complaint, Plaintiff avers as follows:

These [hip] issues started in Jan 2015 and have gone on to the last date of my last consult with a hip replacement surgen [*sic*] of Centurion Medical's chooseing [*sic*] on August, 24, 2017. I have had one hip surgery in order to try and save this hip and rectify the blood flow issue. It was done on 10-18-2016 but was unsuccessful. This hip decompress[ion] procedure was done by Dr. Ronald Baker at Meharry General on 10-18-16. Total right hip replacement was recomended [*sic*] by Dr. Baker also. I was sent to a Dr. Thomas J. Limbird who has refused all medical reports, MRI reports or other medical opinions. Dr. Limbird rebukes all the facts regarding the blood flow issues and or the absolute fact my femur is deteriateing [*sic*] away as we speak. My right legg [*sic*] **is very sick**! Dr. Limbird made it very clear that until my legg [*sic*] broke or my hip completely broke there would never be a hip replacement "because" he did not like operateing [*sic*] on incarcerated inmates due to the risk of infections being higher. I contest that my risk as a diabetic goes up further every day due to the deteriation [*sic*] of my legg [*sic*] and my hip getting worse each day from lack of blood. I am in desperate need of a 3rd and unbias [*sic*] opinion as has been recommended by my primary care taker and doctor Charles Sidberry at RMSI. We have been denied by Centurion Medical and told Dr. Limbird's opinion is the one that should count. **(FINAL).** Dr. Limbird is the only hip specialist in Centurion relm [*sic*] of hip surgens [*sic*] or specialist[s]. He is hand picked and definitely "not" unbias [*sic*] and is simpathetic [*sic*] to Centurion's profit margines [*sic*]. Dr. Limbird made it very clear to me on August 24, 2017 that I would be better off to have my hip replaced after released from prison. This would be my 2nd consult with Dr. Limbird and the 2nd time he has refused my surgery and denied or ignored all other evidence. . . . I have also said and can prove from existing medical records and reports that Dr. Thomas J. Limbird is not only wrong, he is intentionally derailing my hip replacement in order to avoid doing surgery on

8

incarcerated inmates and to save Centurion Medical of Tennessee the cost of a total hip replacement. Dr. Thomas J. Limbird is intentionally and negligently allowing my right femur to go further into a deteriated [sic] state and placing me at a much greater risk of looseing [sic] not only my legg [sic] "but" possibly my very life due to any infections that may very well arise due to waiting to [sic] long before doing the hip replacement proceedure [sic] "or" not doing it at all as he said. . . .

As of the denial by Centurion to give me, and send me to a 3rd and unbias [sic] opinion which was requested by my primary doctor at Riverbend, I have now had new xrays taken on June 14, 2007. It recomended [sic] a new MRI which resulted in worsening deteriation [sic] in the hip, all ball joints and right femur. Instead of a 3rd unbias [sic] opinion I was sent to Dr. Limbird again for another preplaned [sic] denial of surgery.

As of today August 28, 2017 Dr. Charles Sidberry has and is going to re-submit me for a 3rd opinion again with Centurion in hopes of gaining the medical treatment I desperately require. . . .

My two MRIs and many xrays speak for themselves as to the status and progression of the irreverseable [sic] avascular nercrosis deteriation [sic] bone disease of my right hip, ball joint and right leggs [sic] upper femur . . .

I am being intentionally ignored and neglected simply because Dr. Limbird does not wish to do surgery on me as a [sic] incarcerated man. . . .

On my last consult to Dr. Thomas J. Limbird at Meharry Hospital on August 24, 2007, I was asked again "**just like before**" how long I had left before being released from prison? I answered approx 2-3 years. Dr. Limbird remarked that I had just better get ready to come see him every 4 months for the next few years. Dr. Limbird stated he had "no intentions" of doing a total right hip replacement on me because I was incarcerated that they do not ever like to do major surgeries [sic] on inmates. He denied there was a blood flow restriction issue to my right legg [sic] "or" that I and the deteriation [sic] issues have worsend [sic] in the last 6 months prior to seeing him last (on 2-24-17). He stated that there were (no changes at all) and that all the medical papers were just a bunch of papers in a envelop [sic]. He said the medical papers sent to him meant

9

> nothing and wouldn't even recognize [*sic*] or consider them (including) the most recent MRI report taken at special needs on July 20, 2017. He said to me that he had no intentions of ever doing a hip replacement if it was up to him "or" util [*sic*] there was a broken bone. . . .
>
> I also further claim that Centurion Medical and Dr. Limbird is [*sic*] intentionally slow walking me and my medical crises in order for someone else other than them to be left with the cost, burden and responseabilily [*sic*]. They are both trying to pawn off the responseability [*sic*] to anyone other than the Centurion Medical provider "even" if it is at the cost of my overall health and welfare.
> . . .

Docket No. 1 (emphasis original).

### III. Law and Analysis

**A. Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate

standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

## B. 42 U.S.C. § 1983

### 1. Generally

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

11

deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### 2. Eighth Amendment

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety.

12

*Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

### 3. Official Capacity Claims

In complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*. In order for the public entity to be subject to liability under § 1983, the plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 41 (1989); *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978).

### 4. Individual Capacity Claims

42 U.S.C. § 1983 does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

In order for a defendant to be held liable in his individual capacity, a plaintiff must demonstrate that that defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations

omitted).  *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.)  Conclusory allegations are not enough.  *See Street,* 886 F.2d at 1479.  *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).  Plaintiff must establish a "causal connection between the misconduct complained of and the official sued."  *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

**C.  The Case at Bar**

    **1.  Dr. La**

As an initial matter, to the extent that Plaintiff sues Dr. La in his official capacity, Dr. La stands in the shoes of his employer, Centurion of Tennessee, LLC.  *Claybrook*, 199 F.3d at 355 n.4, *citing Graham*, 473 U.S. at 165; *Frost*, 851 F.2d at 827. Accordingly, Plaintiff's official capacity claims are against Centurion, and his official capacity claims against Dr. La should be dismissed.

Additionally, as to any individual capacity claims against Dr. La, in order to establish that Dr. La was deliberately indifferent to Plaintiff's serious medical need of a right hip replacement, Plaintiff must establish that Dr. La personally condoned, encouraged, or participated in the conduct that allegedly violated his rights.  *Birrell*, 867 F.2d at 959; *Bellamy,* 729 F.2d at 421. Taking the allegations of Plaintiff's Complaint as true, as can be seen in the factual recitals set forth above, Plaintiff has failed to do so.  The gravamen of Plaintiff's allegations against Dr. La

14

are that he "intentionally mishandled" the treatment of Plaintiff's scabies infection, which then led to a deterioration of Plaintiff's hip. Plaintiff does not levy allegations against Dr. La specifically with regard to any condonation, encouragement, or participation in the treatment of his hip condition once that condition was known. Moreover, as also demonstrated in the factual recitals above, the general "intentional mishandling" allegations of Plaintiff's Complaint relating to Dr. La are conclusory, and as has been discussed, conclusory allegations are not enough. *See Street,* 886 F.2d at 1479; *Anderson,* 477 U.S. at 257; *Nix,* 160 F.3d at 347; *Lujan,* 497 U.S. at 888; *McDonald,* 898 F.2d at 1162. Absent specific allegations of Dr. La personally condoning, encouraging, or participating in the denial of care for Plaintiff's hip condition, Plaintiff cannot sustain his individual capacity claims against Dr. La and those claims should be dismissed.

### 2. Centurion of Tennessee, LLC

Because the State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated (*Estelle v. Gamble,* 429 U.S. 97, 104 (1976)), prison administrators bear the responsibility of delivering health services at each facility and must designate a specific health authority to provide health services to that facility. *West v. Atkins*, 487 U.S. 42, 55 (1988). In the case at bar, Defendant is a private entity that contracts with the State to provide medical care to prison inmates. A private entity that contracts with the State to perform a traditional state function, such as providing medical services to prison inmates, acts under color of state law and may be sued under § 1983. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Thus, Centurion of Tennessee, LLC is amenable to suit under § 1983.

As discussed above, in order for Centurion to be subject to liability under § 1983,

15

Plaintiff must plead allegations, *inter alia*, that Centurion adopted an "official policy or custom . . . with 'deliberate indifference' towards [his] constitutional rights. . . ." *City of Canton*, 489 U.S. at 387-388; *Monell*, 436 U.S. at 690-691. Liberally construing the allegations of Plaintiff's Complaint, Plaintiff avers that Dr. Limbird essentially had a policy or custom to not operate on inmates; however Dr. Limbird is not a Centurion employee and Plaintiff does not aver that Centurion adopted an official policy or custom with deliberate indifference towards his constitutional rights. In fact, Plaintiff's Complaint avers that he received repeated consults with specialists Dr. Baker and Dr. Limbird, received numerous xrays and MRIs, underwent a hip decompression surgery, and had repeated and continuous care with Dr. Sidberry. *See* Docket No. 1. Taking the allegations of Plaintiff's Complaint as true, Plaintiff cannot establish that Centurion was deliberately indifferent to his serious medical needs relating to his hip. Plaintiff's claims against Centurion, therefore, should be dismissed.

## IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 37) be GRANTED, and that this Plaintiff's claims be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this

Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌‌_____
JEFFERY S. FRENSLEY
United States Magistrate Judge