RECEIVED IN CLERK'S OFFICE
FEB 2 8 2018
U.S. DISTRICT COURT
MID. DIST. TENN.

| | |
|---|---|
| DARRELL WADE HEARD, TDOC #370271, ) ) ) PLAINTIFF, ) ) VS. ) ) TONY PARKER, Commissioner of ) T.D.O.C.; CENTURION OF ) TENNESSEE (MEDICAL); DR. HAU ) LA, M.D.; MR. SHOA MA, NURSE ) PRACTIONER; and DR. THOMAS J. ) LIMBIRD, M.D., ) ) DEFENDANTS. ) | CIVIL ACTION NO.3:17-cv-01248 Judge Aleta A. Trauger **Motion DENIED as MOOT.** *[signature]* |

# MOTION FOR STATUS ON ALL MOTIONS PARTICULARLY STATUS OF:
## MOTION FOR STATUS HEARING with MOTION FOR PRODUCTION TRANSPORTATION ORDER REQUEST (Filed: January 5, 2018)

**COMES** now, Darrell W. Heard, Plaintiff, *pro se,* TDOC No. 370271, who moves this honorable court for a status of the motion for status hearing with motion for production transportation order request, filed January 5, 2018.

Plaintiff avers the following:

1. That Plaintiff is not an attorney, is handicapped, and his rights may be violated and taken advantage of by the defendants if his *motion for appointment of attorney* is not granted (SEE MOTION FOR APPOINTMENT OF COUNSEL IN RECORD);

2. That this court has received the motion for status hearing with motion for production transportation order request filed on January 5, 2018. (SEE Exhibit 1);

3. Plaintiff maintains his claim has merit, where this court has jurisdiction over the subject matter and plaintiff to adjudicate his claim for relief, and is entitled to a reply from the court on each of his motions;

4. **FOR THE RECORD,** the court has been advised that the plaintiff continues to suffer from physical pain and other medical complications which he, now, solely relies on

this court to rectify because the [Medical Department] defendants (**Centurion of Tennessee, et. al.**) have refused to respond to plaintiff's reasonable requests to resolve this complaint; and,

5. That setting a *status hearing* with the production of the **physically crippled** plaintiff -- who is in ***imminent danger*** and continues to be in pain and suffering -- is vitally necessary for this court to receive **VISUAL** as well as SUBSTANTIAL relevant material evidence to see that plaintiff's claim has great need of immediate attention, especially because of the life and death situation which – if unattended – would *permanently* cripple (physically) the plaintiff for life, resulting in aggravated and additional pain and suffering because the defendants have failed to respond to plaintiff's request to schedule a medical doctor – as promised by R.M.S.I. Staff -- to facilitate and begin providing adequate *reasonable required* **necessary** care and treatment to the plaintiff with a scheduled appointment to see a specialist in hip surgery to repair the damage aggravated and caused by the defendants. (Clearly, an Eighth Amendment Violation of Cruel and Unusual Punishment as described in the U.S. Constitution to the United States.) (SEE Exhibit 2)

**WHEREFORE**, plaintiff prays for a *response* to his filed motions, and a Transportation Order be issued in this instant case in the interests of justice, especially for this honorable court to see the plaintiff's **physically declining condition**, which is *prima facie* evidence in this case supporting plaintiff's case.

Submitted this 23rd day of Feb, 2018.

*Darrell W. Heard*
DARRELL W. HEARD
Plaintiff
RMSI- #370271 5C-101
7475-Cockrill Bend Blvd.
Nashville, TN. 37209

2

Copy
Exh. 1
RECEIVED
IN CLERK'S OFFICE
JAN 0 5 2018
U.S. DISTRICT COURT
MID. DIST. TENN.

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

DARRELL WADE HEARD, )
TDOC #370271, )
)
    PLAINTIFF, )
)
VS. )    **CIVIL ACTION NO.3:17-cv-01248**
)
TONY PARKER, Commissioner of )    Judge Aleta A. Trauger
T.D.O.C.; CENTURION OF )
TENNESSEE (MEDICAL); DR. HAU )
LA, M.D.; MR. SHOA MA, NURSE )
PRACTIONER; and DR. THOMAS J. )
LIMBIRD, M.D., )
)
    DEFENDANTS. )

## MOTION FOR STATUS HEARING with
## MOTION FOR PRODUCTION
## TRANSPORTATION ORDER REQUEST

**COMES** now, Darrell W. Heard, *pro se,* TDOC No. 370271, who moves this honorable court to schedule a **Status Hearing** issue the following *Transportation Order* to the Tennessee Department of Correction for the Plaintiff, Darrell W. Heard, *pro se,* TDOC No. 370271, housed at Riverbend Maximum Security Institution, Nashville, Tennessee to be transported to the Federal Courthouse in Nashville, Tennessee for the *Status Hearing* before this court, and to be returned to Riverbend the same day after completion of the hearing. (Plaintiff has a Constitutional Right to be at every stage of the case process.)

### JUSTIFICATION

1.     Plaintiff is not a lawyer, nor schooled in the law and should be given consideration for his lay inabilities.
2.     Plaintiff maintains his claim has merit, where this court has jurisdiction over the subject matter and plaintiff to adjudicate his claim for relief.
3.     From the record, the court will note that the plaintiff continues to suffer from physical pain and other medical complications which he, now, solely relies on this court to rectify because the [Medical Department] defendants (**Centurion of Tennessee, et.**

Reference To Case #: 3:17-CV-01248  
DARRELL W. HEARD #370271  
VS.  
TONY PARKER, et al.  
AND DEFENDANTS  

<u>Attachment Sheets</u> (1-5)   (1) Exh. 2

Feb. 22, 2018

Dear Judge Trauger,

The defendants in this case are intentionally dragging out their sole responseability of locateing and retaining another qualified Orthopedic Hip Replacement specialist for me to see. The defendants have exceeded and surpassed the mandated time limits which requires the health care provider to have the inmate (myself) at the consult "within 60 days" after the aproval of the refered and aproved consult, according and specified by

Note → index #: 113.2 page 3 —— Authority TCA 4-3-603/ and TCA-4-3-606.

- I was refered by Dr. Charles Sidberry (primary doctor) at Riverbend on "And" for a 3rd opinion on (10-4-017.)
- A Dr. Conway secretly retracted the aproval of this 3rd opinion on (10-12-017) stateing we do not do 3rd opinions.
- I was then "inapropriately" scheduled by another doctor named Dr. Turney to go back and see the (defendant) Dr. Thomas J. Limbird on (11-29-017).

I was to see Dr. Limbird this time at Centenial Hospital "instead" of Meharry Hospital where I have always seen him. I believe this was intentionaly done to create a huge impropriety and conflict of intrest in order to get the case dismissed.

Centurion medical is well aware of what they did and what they are doing all in efforts of Derailing the case and Dodgeing any liability.

It has NOW Been WELL OVER (120 DAYS) since I WAS Aproved "AND" Scheduled to see A Hip Specialist in Regards to my very serious Bone Desiese of Avascular Necrosis "Which is" Worsening by the day And Keeping me in CONSTANT, Severe, And Unbearable Pain.

The Defendants (Centurion of TENN. LLC.) have been claiming for months now that they CAN NOT find Another Hip Replacement specialist "OR" Surgen Anywhere in the Entire State of Tennessee who will work ON "OR" treat inmates who ARE INCARCERATED "OR" in the TDOC.

I Attest that this Excuse is UNbelievable, UNtrue, And Rediculous. This EXCUSE serves only one purpose which is to Drag Out, Delay, And Deny me the medical intervention I Deserve And Require. "As Well," the only thing that Will Cure me "Which is" A Total Right Hip Replacement. This much Needed Proceedure will cure me of this Bone Disease, Blood Flow Restriction issues, And Hopefully stop Further Deteriation of my Right Femur.

Note → I Am Asking "NOT ONLY" Set And Aprove A Date for A status hearing "But to Also" ORDER And Place AN INJUNCTION Against CENTURION MEDICAL LLC. To Secure, Provide, And Pay For A outside the Relm of their own Contracted Doctors, A Compident And Responseable hip specialist "AND" SURGEN FOR me "NO MATTER" what the Cost is "OR" how it may Effect their Profit Margines At Centurion Medical of TENN. LLC. AND TO DO this within A 30 DAY Window of the ORDERED Injunction by this court. This is Paramount!

Case 3:17-cv-01248 Document 55 Filed 09/11/18 Page 5 of 19 PageID #: 489

This irreverseable "AND" Nacrotic Bone Deteriation Disease is "AND" was Caused by the Excessive and Abuseive use of High doses of Powerful steroids by the Defendants. This entire Medicle Crises was inflicted on me by incompident Health Care staff and Providers.

Therefore, I Attest that Fixing me, my Hip, and very Possibly my Right Femur "AND" Stopping the Deteriation From Progressing should be "First and Foremost" in the Heads of everyone involved or Concerned in the matter.

I Respectfuly Request that this Court Demand and Order Centurion Medicle of Tenn. LLC. to take the sole Responseability in which they Contracted out to Do "And" make me whole once again At no matter what the Cost.

I Am Also Respectfuly Asking that this Court Answer All the Motions and Request that have been Filed since the original Fileing of this Civil suit on Sept, 11, 2017.

There has been Absolutely "NO" Decisions or Ruleings made on Any of the motions or Request since Sept 11, 2017.

I Am "ONCE AGAIN" Requesting that I be Apointed Legal Representation in this Case Due to the severity of my medicle issues, The Fact I Am in Constant and Severe Pain "AND" that I Am in Fact in imanent Danger of looseing my limbs and my life. The Further these issues Are Allowed to Progress, The Higher my Risk goes up of looseing my entire Right legg or my life.

I am a Insulin Dependent Diabetic which Also Can change

Everything as time goes on "OR" if my Diabeties worsens.

The Risk of Complications or Infections After surgery are High Enough at this Point. I Need to Get this Hip Replaced "NOW" while my Risk is minimum "AND" while my sugar is Under Control. I'm doing my Part! They Need to As Well!

There is "NO" saveing these Ball joints, my Right Hip, or the Upper part "AND" Ball joint Head of the Right Femur.

This Avascular Necrosis (Nacrotic) Bone Disease is irreversable "AND" Permanent Damage – DEAD!! "Nacrotic" means DEAD Bone!! DEAD is DEAD!!

I Am in Extreme iminent Danger of looseing my limbs "OR" possibly my life if these issues Aren't Dealt with imeadiately. I Am no longer takeing Any Kind of Narcotics "OR" opioids which means the Pain levels Are Constant and severe. I DID NOT WANT to be dependant "OR" Adicted to the loritabs or Morphine.

I Desperately Need A Lawyer to Help me with the Complex Legal Terms, and litigation that is involved with A Case of this Nature. I Depend on A Cain For Mobility.

Note → I Am Not Physicaly Able "OR" Fit to sit "OR" stand for any period of time "Much less" concentrate "OR" litigate while under so much stress "AND" in so much Pain.

It should be noted And be made Part of the Record that the R.M.S.I. Health Administrator (melissa Adams) has Relayed to me From Centurion Medicle of Tenn LLC. Central office "ON or About 10·12·017" the fact that they can't find any hip specialist Anywhere in the state.

Centurion also told Melissa Adams to tell me that "if" I could find another Doctor, Hip specialist, "or" Surgen that would see me, to give them the Name "or" Names and they would send me to them for treatment. "No Problem"!! What happened? I Gave them 2 Hip specialist names but never heard a word back from Centurion or Health Administrator (Melissa Adams).

(The First) was — Dr. Gautsch and Partner — (Partner does Hips)
    Practice. Southern Sports medicine
    Gallatin, Tenn. — (3rd RANKS Best in the U.S.)

(The 2nd) was — Dr. Bill Kurtz (5 stars) No Bad Reviews
    Practice. St. Thomas Hospital
    Nashville, Tenn.

I Am Respectfuly Asking that this Court vigerously Pesuade or Request that Centurion seek the Help of these outside the Relm medicle groups and Doctors.

Note → I Have only 18 months left on a 15 year sentence. I Desperately need to be whole again, get surgery, Rehabilitate my Body, and Be able to work in order to support myself once Released on Nov, 07, 2019.

Centurions Plann is to Drag this out no matter what it Does to me "or" my Health in the next 18 months — Kick me out of Prison and let the Tax Payers Pay the Cost of their incompidence, Neglect, and liability issues.

I Disagree with this whole Heartedly!! They Caused Every bit of these Nacrotic Bone issues "AND" I have been ignoired by Unamed Forever — They must be Held accountable



Part of: Exh. 2

| | | |
|---|---|---|
| ADMINISTRATIVE POLICIES AND PROCEDURES State of Tennessee Department of Correction | Index #: 113.12 | Page 1 of 4 |
| | Effective Date: June 1, 2015 | |
| | Distribution: A | |
| | Supersedes: 113.12 (7/15/11) PCN 11-39 (11/1/11) | |
| Approved by: Derrick D. Schofield | | |
| Subject: SPECIALTY CONSULTANT SERVICES | | |

I. AUTHORITY: TCA 4-3-603 and TCA 4-3-606.

II. PURPOSE: To ensure that the availability of specialty consultation and services for inmates are consistent with community standards for health care.

III. APPLICATION: Wardens, Associate Wardens, health administrators, health care staff, medical contractors, inmates, and privately managed institutions.

IV. DEFINITIONS:

   A. Central Dispatch Office (CDO): A function of the office of Director of Classification which coordinates, and schedules, the transfer and transportation of inmates.

   B. DeBerry Special Needs Facility (DSNF) Scheduler: The DSNF employee(s) assigned to coordinate the scheduling of approved inmate specialty consultation services.

   C. Utilization Management Entity (UME): The person(s) or contractor designated by the Tennessee Department of Correction (TDOC) to process all requests for inpatient and outpatient specialty care.

V. POLICY: Consultation by a medical specialist or other health professional, as well as any prescribed treatment, shall be made available when it is determined that an inmate requires specialty care beyond the training or expertise of the institutional health care staff or institutional resources.

VI. PROCEDURES:

   A. General

      1. All requested consultations or services (including elective surgeries) shall be reviewed by the UME to determine medical necessity. Services shall be approved and performed only when they are determined to be medically necessary to correct a substantial functional deficit, or if when an existing pathological process threatens the well-being of an inmate over a period of time. To facilitate such requests, health care information shall be released in accordance with Policy #113.52.

  2. The TDOC UME shall make every effort to provide specialty consultant services locally when feasible for those inmates housed in Davidson County. Otherwise, specialty care, consultations, and diagnostic testing shall be primarily provided at the DeBerry Special Needs Facility (DSNF) for males and the Tennessee Prison for Women (TPFW) for females. Specialty consultant services may also be provided at an alternative site as determined by the UME when such services are beyond the capability of the facility.

  3. For inmates housed at a privately managed facility, specialty consultant services shall be approved or denied by the UME within seven working days from the date of referral.

  4. At least annually, the UME of both the TDOC and the privately managed facilities shall provide an updated, written list of outpatient and inpatient referral sources for designated facilities. The list shall be distributed to all applicable facilities and the Director of Clinical Services.

B. Consultation Request Process, Evaluation, and Classification

  1. Referrals to specialists shall be made only by a licensed medical provider (physician, dentist, optometrist, or mid-level provider). The licensed medical provider should only request a referral for an inmate if he/she can justify that the inmate's condition is causing (or may potentially cause) the inmate undue suffering, severely limiting the inmate's ability to participate in activities of daily living, or is expected to worsen in severity. All referrals for services shall be subject to the approval of the UME.

  2. All requests for consultation and/or specialty care shall be submitted to the UME in the manner designated by the UME and approved by the State. The licensed medical provider requesting the service shall provide pertinent information to justify the medical necessity of the request. Entries shall include a detailed history consisting of an evaluation, suspected diagnosis (if known), and results of laboratory or radiology studies, etc.

  3. Requests that are not deemed to be medically necessary but require more intervention at the primary level shall be returned with a written explanation. For all institutions, the TDOC Director of Clinical Services, in conjunction with other staff, shall have the authority to reverse or modify decisions made by the Utilization Management Entity (UME).

  4. All routine requests shall be evaluated and classified based on the urgency and priority of need. All emergency requests shall be addressed in accordance with Policies #113.04, #113.30, and #113.32.

C. For TDOC Facilities Only:

1. Approval of Specialty Consultation Requests: Once approved, specialty consultations shall be scheduled by the UME. The date, time, provider, and location of the appointment shall be communicated to the DSNF scheduler and/or the institution requesting the consultation request. All approved referrals shall have a designated appointment date as indicated below from date of approval:

    a. Urgent referrals within 14 working days

    b. Routine referrals within 60 calendar days

2. Coordination of Specialty Consultation Services: The DSNF scheduler shall record approved consultations and appointments on LIMA (in e-TOMIS). He/she shall coordinate transportation from DSNF to off-site specialty consultations through the Central Dispatch Office and shall document the transfer on LIMA.

3. Inmate Notification of Off-Site Medical Appointments: The health care staff shall meet with the inmate to ensure that he/she understands that a consultation or procedure has been scheduled and that he/she will be transported for this purpose in the near future. The health care staff of the sending institution shall then review the inmate's health record to ensure that all documentation is in order for the consultation or procedure no later than three days prior to scheduled transportation. At no time shall staff inform an inmate of the specific date, time, or location of an off-site medical appointment.

D. Inmate Refusal of Health Services: An inmate's refusal of health services shall be addressed in accordance with Policies #113.51 and #113.15.

1. In the event the licensed medical provider believes the inmate's refusal is life or limb threatening, he/she shall counsel the inmate regarding the potential health consequences of the refusal.

2. Should the inmate continue to refuse treatment, the licensed medical provider may contact the Medical Director at DSNF (or TPFW for females) to request a temporary transfer of the inmate so that he/she will be in proximity to the TDOC contracted hospital. Licensed medical staff shall document the refusal on the Problem Oriented Progress Record, CR-1884; Refusal of Medical Services, CR-1984; and on LIMA in e-TOMIS.

3. If it is documented in the health record that the inmate affirmed that he/she would go to the scheduled appointment then refuses to be transported on the day of transfer, the inmate shall be charged $10.00.

    The inmate shall also be charged $10.00 if he/she has been transferred to DSNF for a specialty consult/appointment and, once at DSNF (or TPFW for women), refuses to go to the scheduled clinic at the appointed time.

  E. <u>Documentation of Specialty Consultation Recommendations</u>: Within seven days following the specialty consultation or procedure, the physician or contractor shall submit the results of the consultation and/ or procedure in a typed report which provides sufficient information to ensure continuity of care including:

    1. Reason for consultation
    2. Patient's chief complaint
    3. History of present illness
    4. Past medical history
    5. Social history
    6. Family history
    7. Review of systems
    8. Prescribed medications
    9. Physical examination
    10. Laboratory results
    11. Diagnostic studies
    12. Assessment/ Findings
    13. Plan/ recommendations, including referrals for other needed specialty care

  F. <u>Post Consultation</u>: Once the specialty consultation has been completed and unless the inmate needs additional care or procedures immediately, the inmate shall be returned to the sending institution. The institutional physician shall review the specialist's report with emphasis on the findings, treatment, and recommendations.

VII. <u>ACA STANDARDS</u>: 4-4348 and 4-4347.

VIII. <u>EXPIRATION DATE</u>: June 1, 2018.

Part of Exh. 2



MENU  Search Mayo Clinic

Request an Appointment
Find a Doctor
Find a Job
Give Now

Log in to Patient Account
English

Patient Care & Health Information    Diseases & Conditions

# Avascular necrosis

Request an Appointment

Symptoms & causes    Diagnosis & treatment

## Overview

Print    Advertisement

Avascular necrosis is the death of bone tissue due to a lack of blood supply. Also called osteonecrosis, avascular necrosis can lead to tiny breaks in the bone and the bone's eventual collapse.

The blood flow to a section of bone can be interrupted if the bone is fractured or the joint becomes dislocated. Avascular necrosis is also associated with long-term use of high-dose steroid medications and excessive alcohol intake.

Anyone can be affected by avascular necrosis. However, it's most common in people between the ages of 30 and 60. Because of this relatively young age range, avascular necrosis can have significant long-term consequences.

Start Download
- View PDF

Convert From Doc to PDF, PDF to Doc Simply With The Free Online App!

FromDocToPDF

## Symptoms

Many people have no symptoms in the early stages of avascular necrosis. As the condition worsens, your affected joint may hurt only when you put weight on it. Eventually, the joint may hurt even when you're lying down.

Pain can be mild or severe and usually develops gradually. Pain associated with avascular necrosis of the hip may be focused in the groin, thigh or buttock. In addition to the hip, the areas likely to be affected are the shoulder, knee, hand and foot.

Start Download
For PDF

Start Download
- View PDF

Some people develop avascular necrosis bilaterally — for example, in both hips or in both knees.

### When to see a doctor

See your doctor if you have persistent pain in any joint. Seek immediate medical attention if you believe you have a broken bone or a dislocated joint.

**Request an Appointment at Mayo Clinic**

## Causes

Avascular necrosis occurs when blood flow to a bone is interrupted or reduced. Reduced blood supply can be caused by:

- **Joint or bone trauma.** An injury, such as a dislocated joint, might damage nearby blood vessels. Cancer treatments involving radiation also can weaken bone and harm blood vessels.
- **Fatty deposits in blood vessels.** The fat (lipids) can block small blood vessels, reducing the blood flow that feeds bones.
- **Certain diseases.** Medical conditions, such as sickle cell anemia and Gaucher's disease, also can cause diminished blood flow to bone.

For about 25 percent of people with avascular necrosis, the cause of interrupted blood flow is unknown.

## Risk factors

Risk factors for developing avascular necrosis include:

- **Trauma.** Injuries, such as hip dislocation or fracture, can damage nearby blood vessels and reduce blood flow to bones.
- **Steroid use.** High-dose use of corticosteroids, such as prednisone, is the most common cause of avascular necrosis that isn't related to trauma. The exact reason is unknown, but one hypothesis is that corticosteroids can increase lipid levels in your blood, reducing blood flow and leading to avascular necrosis.  *(NOTE)*
- **Excessive alcohol use.** Consuming several alcoholic drinks a day for several years also can cause fatty deposits to form in your blood

Mayo Clinic does not endorse companies or products. Advertising revenue supports our r for-profit mission.

**Advertising & Sponsorship**
Policy | Opportunities | Ad Choices

**Mayo Clinic Marketplace**

Check out these best-sellers and special c on books and newsletters from Mayo Clini

The Mayo Clinic Diet Online

Reduce the impact of stress on your healt

NEW — Guide to Integrative Medicine

How to prevent, control and live well with diabetes

FREE TRIAL — Mayo Clinic Health Letter

Advertisement



- vessels.
- **Bisphosphonate use.** Long-term use of medications to increase bone density may be a risk factor for developing osteonecrosis of the jaw. This complication has occurred in some people treated with these medications for cancers, such as multiple myeloma and metastatic breast cancer. The risk appears to be lower for women treated with bisphosphonates for osteoporosis.
- **Certain medical treatments.** Radiation therapy for cancer can weaken bone. Organ transplantation, especially kidney transplant, also is associated with avascular necrosis.

Medical conditions associated with avascular necrosis include:

- Pancreatitis
- Diabetes
- Gaucher's disease
- HIV/AIDS
- Systemic lupus erythematosus
- Sickle cell anemia

## Complications

Untreated, avascular necrosis worsens with time. Eventually the bone may become so weakened that it collapses. Avascular necrosis also causes bone to lose its smooth shape, potentially leading to severe arthritis.

## Prevention

To reduce your risk of avascular necrosis and improve your general health:

- **Limit alcohol.** Heavy drinking is one of the top risk factors for developing avascular necrosis.
- **Keep cholesterol levels low.** Tiny bits of fat are the most common substance blocking blood supply to bones.
- **Monitor steroid use.** Make sure your doctor knows about any past or present use of high-dose steroids. Steroid-related bone damage appears to worsen with repeated courses of high-dose steroids.

By Mayo Clinic Staff

# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| **DARRELL WADE HEARD**, TDOC #370271, ) ) ) | |
| PLAINTIFF, ) ) | |
| VS. ) ) | CIVIL ACTION NO.3:17-cv-01248 |
| <u>TONY PARKER</u>, Commissioner of T.D.O.C.; <u>CENTURION OF TENNESSEE</u> (MEDICAL); <u>DR. HAU LA</u>, M.D.; <u>MR. SHOA MA</u>, NURSE PRACTIONER; and <u>DR. THOMAS J. LIMBIRD</u>, M.D., ) ) ) ) ) ) ) ) | Judge Aleta A. Trauger |
| DEFENDANTS. ) | |

## ORDER TO PRODUCE

In the interest of justice, and for good cause shown, a *Status Hearing* is scheduled in this matter for _____, 2018 at _____ a.m. / p.m. at the Federal Courthouse, Nashville, Tennessee before the undersigned. It is hereby ORDERED that the State of Tennessee and/or the Tennessee Department of Correction and/or the Warden of Riverbend Maximum Security Institution, 7475 Cockrill Bend Blvd, Nashville, TN 37209-1048, where Plaintiff is presently confined, produce and deliver plaintiff, Darrell W. Heard, *pro se*, TDOC No. 370271, to this hearing no later than _____ **a.m.** / _____ **p.m.** on _____, **August** _____, **2018**, and return him back to Riverbend the same day. The Clerk of the Court is directed to send a copy of this Order to the Warden of Riverbend Maximum Security Institution, 7475 Cockrill Bend Blvd, Nashville, TN 37209-1048.

IT IS SO ORDERED.

_____
**JUDGE ALETA A. TRAUGER**

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the above document was served upon:

**U.S. District Court,** Middle District Clerk, 801 Broadway Rm. 800 US Courthouse Nashville, TN 37203
**TONY PARKER:** T.D.O.C., 320 Sixth Ave., Rachel Jackson Bldg, Nashville, TN 37243
**CENTURION OF TENN. LLC:** 53 Century, Ste. 50, Nashville, TN 37214
**DR. HAU LA, M.D:** C/O **CENTURION OF TENN. LLC,** 53 Century, Ste. 50, Nashville, TN 37214
**MR. SHOA MA, NURSE:** R.M.S.I. Medical DEPT, 7475 Cockrill Bend Blvd, Nashville, TN 37209
**DR. THOMAS J. LIMBIRD**: C/O Bryan Essary, Attorney, 315 Deaderick St., Ste. 1100, Nashville, TN 37238

via U.S. Mail, postage prepaid this 23rd day of Feb_____, 2018.

*Darrell W. Heard*
Darrell W. Heard, Plaintiff

DARRELL W. HEARD
RMSI- #370271 5C-101
7475 COCKRILL BEND RD.
NASHVILLE, TN 37209-1048

CASE # 3:17-CV-01248

**LEGAL MAIL**

RECEIVED
FEB 28 2018
RMSI-MAILROOM
OUTGOING LEGAL

U.S. District Court, Middle District
Court Clerk: Keith Throckmorton
US Courthouse Rm. 800
801 Broadway
Nashville, TN 37203

RECEIVED
IN CLERK'S OFFICE
FEB 28 2018
U.S. DISTRICT COURT
MID. DIST. TENN.





