IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **DARRELL W. HEARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:17cv-01248** |
| | ) | **Judge Aleta A. Trauger** |
| **TONY PARKER, Commissioner of** | ) | |
| **T.D.O.C.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

The magistrate judge issued a Report and Recommendation ("R&R") (Doc. No. 52) on August 20, 2018, recommending that the Motion to Dismiss (Doc. No. 37) filed by defendants Centurion of Tennessee, LLC and Hau La, M.D. be granted and, since these are the only two defendants against whom claims remain pending, that this case be dismissed. On August 31, 2018, plaintiff Darrell Heard, through counsel, filed timely Objections to the R&R (Doc. No. 54), to which the defendants have responded. (Doc. No. 56.)

For the reasons set forth herein, the court will accept in part and reject in part the R&R. The court finds that the Complaint states a colorable claim of deliberate indifference against defendant Dr. La that is not barred by the statute of limitations, but fails to state a claim against defendant Centurion. The Motion to Dismiss will therefore be granted in part and denied in part, with the claim against Dr. La permitted to proceed.

## I.    Procedural Background

Darrell Heard filed his *pro se* Complaint (Doc. No. 1) on September 12, 2017, along with over 100 pages of exhibits, against defendants Tony Parker, Commissioner of the Tennessee

Department of Correction, Centurion, Dr. La, Nurse Practitioner Shoa Ma, and Dr. Thomas J. Limbird.[1] The Complaint asserts claims under 42 U.S.C. § 1983 based on allegations of the defendants' deliberate indifference to the plaintiff's serious medical needs. Upon conducting the initial screening of the Complaint required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915A, 1915(e)(2), the court dismissed the claims against defendants Tony Parker and Shoa Ma but found, for purposes of the initial screening, that the allegations in the Complaint were sufficient to state a colorable claim against defendants Dr. La, Centurion, and Dr. Limbird. (Doc. Nos. 20, 21.) As the court noted then,

> the complaint alleges that Dr. La knew there was an outbreak of scabies at the facility and willfully refused to test and treat the plaintiff for scabies and instead intentionally subjected the plaintiff to a dangerous course of steroid treatment— over the plaintiff's objection and the objection of La's medical staff—which ultimately caused the plaintiff great harm. These allegations, "if true, would show that the [defendant] being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [the defendant] did in fact draw the inference, and that [the defendant] then disregarded that risk.

(Doc. No. 20, at 8 (citations omitted).) Regarding Centurion, the court found that, "liberally construing the pro se complaint, the plaintiff alleges that Centurion's policies, including the policy that inmates should not be permitted to undergo major surgeries to save money, are responsible for the plaintiff's injuries." (*Id.* at 11.)

The court also found that the Complaint stated colorable claims against Dr. Limbird. However, on August 10, 2018, the magistrate judge filed a Report and Recommendation (Doc. No. 51), recommending that Dr. Limbird's Motion for Summary Judgment be granted and that Dr.

---

[1] Although the Complaint was filed *pro se* and the plaintiff was permitted to proceed *in forma pauperis*, the court initially denied the plaintiff's first Motion to Appoint Counsel. The plaintiff sought reconsideration of his request for counsel in light of Dr. Limbird's pending Motion for Summary Judgment, and the court appointed counsel on March 21, 2018. (Doc. No. 26.) In April 2018, Roberta Robertson, whose relationship to the plaintiff is unclear, paid the entire filing fee on behalf of the plaintiff. (Doc. No. 34.)

Limbird be terminated as a defendant. No objections were filed in response to that recommendation, so the court summarily accepted it and dismissed all claims against Dr. Limbird on August 28, 2018. (Doc. No. 53.)

In April 2018, Centurion and Dr. La filed a Motion to Dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure, based on insufficient service of process, and under Rule 12(b)(6), asserting that (1) the claims related to the scabies outbreak are time-barred; (2) to the extent the plaintiff's claims sound in negligence under state law, they are barred because the plaintiff did not comply with the procedural requirements of the Tennessee Health Care Liability Act ("THCLA"), Tenn. Code Ann. §§ 29-26-10 *et seq.*; and (3) the allegations in the Complaint, liberally construed, failed to allege facts that, accepted as true, establish that the defendants were deliberately indifferent to the plaintiff's serious medical needs. The plaintiff responded by arguing that: (1) service had been perfected as to all defendants as of the date the plaintiff filed his Response to the Motion to Dismiss, and, even if it had not been, any defects in service could be corrected within a reasonable time; (2) the district court's determination that the Complaint stated colorable claims under the Eighth Amendment constituted the "law of the case" and, therefore, that the defendants' Rule 12(b)(6) motion was barred by *res judicata*; (3) the gravamen of the plaintiff's claims "relates to the injury *to his hip* that resulted from Defendants' deliberate indifference" (Doc. No. 45, at 8), rather than to the scabies outbreak, and those claims are not barred by the statute of limitations because the plaintiff did not discover until January 10, 2017 (less than a year before filing the Complaint) that Dr. La's over-administration of steroids caused the vascular necrosis in his hip; and (4) the statute of limitations relating to his hip injuries should be equitably tolled for the period of time during which the defendants repeatedly assured him that he would receive the recommended hip replacement.

In addressing these arguments, the magistrate judge concluded that, even assuming that "any procedural defects could be cured, Plaintiff's claims could be deemed timely, and Plaintiff could be deemed to have provided constructive notice to Defendants of his [state law] claims, taking the allegations of Plaintiff's Complaint as true, Plaintiff simply cannot establish that Defendants were deliberately indifferent to his hip pain, alleged deterioration, or request for a total right hip replacement." (Doc. No. 52, at 6–7.) The magistrate judge recommended that all claims against the remaining two defendants be dismissed on that basis.

The plaintiff filed timely objections to the R&R. He asserts that (1) the magistrate judge failed to address his argument that the initial screening order in which the court found that the Complaint does state colorable claims against Dr. La and Centurion constitutes the "law of the case" and, therefore, that the defendants' Motion to Dismiss is barred by *res judicata*; and (2) the R&R "misconstrues the Complaint as alleging merely that Defendants 'mishandled' Plaintiff," and the plaintiff has adequately pleaded facts supporting his claims that "Dr. La and Centurion caused his hip to deteriorate to the point of requiring replacement through [their] conscious disregard of the serious risk to the Plaintiff." (Doc. No. 43, at 1–2.)

## II.     Standard of Review

### A.     Review of a Magistrate Judge's Decision

When a party files objections to a magistrate judge's report and recommendation regarding a dispositive motion, the district court must review *de novo* any portion of the report and recommendation to which objections are "properly" lodged. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(B) & (C). Only "specific written objections" to the magistrate judge's proposed factual findings and legal conclusions are "proper" under Rule 72(b). Likewise, the applicable statute contemplates *de novo* determination only "of those portions of the report or *specified*

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (emphasis added).

In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## B. Motion to Dismiss Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action"; instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    Discussion

#### A.    The Initial Screening Does Not Bar a Subsequent Rule 12 Motion

The plaintiff argued in his Response to the Motion to Dismiss that the court's determination at the initial screening stage that the Complaint states colorable deliberate indifference claims against Dr. La and Centurion constitutes the law of the case and that the defendants' Rule 12(b)(6) motion is therefore barred by *res judicata*. (*See* Doc. No. 45, at 6–7.) The magistrate judge failed to consider this issue, and the court reviews it *de novo*.

The law is clear that the *dismissal* of a complaint in its entirety under the PLRA constitutes a final judgment on the merits for preclusion purposes. *See, e.g.*, *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 205–06 (2d Cir. 2002). The cases cited by the plaintiff in support of his *res judicata* argument stand only for that proposition; none holds that allowing a claim to proceed past initial review has preclusive effect. (*See* Doc. No. 45, at 6–7 (citing cases holding that a dismissal under the PLRA constitutes final judgment on the merits).) It is also clear, in this circuit at least, that an initial screening order that permits claims to proceed is not a final judgment on the merits. It is, instead, a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment. *See, e.g.*, *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.").

This court respectfully disagrees with the statement, in a case relied upon by the defendants, that the PLRA screening presents "'a lower burden for the plaintiff to overcome in order for his claims to proceed' than a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." (Doc. No. 50, at 2 (quoting *Leach v. Corr. Corp. of Am.*, No. 3:16-CV-02876, 2017 WL 35861, at *3 (M.D. Tenn. Jan. 4, 2017) (Sharp, C.J.)).) Rather, the PLRA standard is

"virtually identical" to the standard applied to a Rule 12(b)(6) motion. *Burfitt v. Bear*, No. 1:15-cv-730, 2016 WL 4992017, at *2 (S.D. Ohio Aug. 15, 2016), *report and recommendation adopted*, 2016 WL 4944773 (S.D. Ohio Sept. 16, 2016); *Preston v. New York*, 223 F. Supp. 2d 452, 462 (S.D.N.Y. 2002), *aff'd*, 87 F. App'x 221 (2d Cir. 2004). For that reason, "Rule 12(b)(6) motions filed by defendants after the court has conducted the screening required by the PLRA are generally a waste of time because the court has already reviewed the pleading at issue and determined that it withstands scrutiny under Rule 12(b)(6) standards." *Taylor v. Hillis*, No. 1:10-cv-94, 2011 WL 6341090, *2 (W.D. Mich. Nov. 28, 2011), *report and recommendation adopted*, 2011 WL 6370094 (W.D. Mich. Dec. 19, 2011).

At the same time, however, as many courts have recognized, the PLRA "does not obligate the court to screen for every possible defect in a complaint, nor is the screening process infallible." *Steinmetz v. Annucci*, No. 17-CV-01000-LJV-JJM, 2018 WL 4765128, at *2 (W.D.N.Y. June 28, 2018), *report and recommendation adopted*, 2018 WL 4762254 (W.D.N.Y. Oct. 2, 2018); *Burfitt*, 2016 WL 4992017, at *2 n.2 (S.D. Ohio Aug. 15, 2016) ("Due to time constraints, the limited review authorized by the PLRA, and the fact that the Court is not an advocate, the Court's *sua sponte* review of a complaint on initial screening is a relatively cursory one."); *Harris v. Lappin*, No. EDCV 06-0664VBF(AJW), 2009 WL 789756, at *3 (C.D. Cal. Mar. 19, 2009)). Moreover, neither the Federal Rules of Civil Procedure nor the PLRA bars defendants from thereafter filing (or the court from granting) a motion to dismiss. *Steinmetz*, 2018 WL 4765128, at *2; *see also Burfitt*, 2016 WL 4992017, at *2 (holding that a determination that a prisoner complaint that survives an initial PLRA screening does not preclude later dismissal under Rule 12(b)(6) or § 1915(e)(2)).

Finally, the court notes that there are times when it appears from the face of a complaint

that claims are barred by the statute of limitations or other affirmative defenses that may not provide an appropriate basis for *sua sponte* dismissal of a case. *See* Fed. R. Civ. P. 8(a). In such circumstances, however, it is clearly appropriate for the defendant to move for dismissal under Rule 12(b)(6). *See, e.g.*, *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (holding that, when "the allegations in the complaint affirmatively show that the claim is time-barred . . . , dismissing the claim under Rule 12(b)(6) is appropriate," assuming a properly filed motion by the defendant (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007))).

In short, the magistrate judge did not err in considering the defendants' Motion to Dismiss on its merits, as neither the court's initial screening order nor the PLRA bars consideration of such a motion.

**B.      Whether the Complaint States Viable Claims Against Dr. La and Centurion**

*(1)      The Deliberate Indifference Claims Against Dr. La*

Liberally construed, the Complaint appears to state three separate deliberate indifference claims against Dr. La. The first is based on Dr. La's deliberate indifference to the plaintiff's serious medical need for appropriate treatment of his scabies infestation. The plaintiff alleges that Dr. La knew that the plaintiff had scabies but intentionally failed to diagnose it in order not to cause a panic at the prison. As a result, the plaintiff was "left to suffer with this epidemic for months before being allowed to see a skin specialist." (Doc. No. 1, at 3.) He alleges that "[t]his scabies issue started in approximately January 2015 and was allowed to continue for 10 months before quarantining me, de-lousing me, and releasing me. I was treated in a completely different manner regarding a very contagious disease. This is for a fact a case of deliberate indifference." (Doc. No.

1, at 3.[2])

This claim, as the plaintiff implicitly recognizes,[3] is barred by the one-year statute of limitations found in Tenn. Code Ann. § 28-3-104(a), which applies to § 1983 claims in Tennessee. *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000). According to the allegations in the Complaint, the claim based on Dr. La's deliberate indifference to the plaintiff's scabies condition accrued no later than November 2015 (ten months after January 2015), when the plaintiff was finally allowed to see a skin specialist who confirmed that he had scabies and ordered treatment. The plaintiff did not file suit until September 2017, more than a year later.[4] The defendant moved to dismiss this claim on statute of limitations grounds, and the plaintiff, now represented by counsel, has abandoned it.

The second deliberate indifference claim, upon which the R&R focuses, rests on allegations that Centurion and various medical practitioners, including Dr. Limbird, have refused to provide the plaintiff with what he perceives to be a medically necessary total hip arthroplasty. The magistrate judge recommends the dismissal of any such claim against Dr. La, because the allegations in the Complaint do not suggest deliberate indifference to the plaintiff's hip problems: "Plaintiff does not levy allegations against Dr. La specifically with regard to any condonation,

---

[2] For purposes of legibility, the court has corrected spelling errors when quoting the *pro se* Complaint directly.

[3] In fact, despite having clearly alleged a deliberate indifference claim related to the failure to treat his scabies, the plaintiff now expressly disavows such a claim, stating in response to the Motion to Dismiss: "To be clear, while Plaintiff has asserted claims of Defendants' deliberate indifference that include actions taken during the time period he suffered from scabies, Plaintiff is *not* suing for having suffered from scabies." (Doc. No. 45, at 9.)

[4] As suggested above, because the statute of limitations is an affirmative defense that may be waived by the defendant if not properly raised, Fed. R. Civ. P. 8(c)(1), the court did not dismiss this claim on initial review.

encouragement, or participation in the treatment of his hip condition once that condition was known." (Doc. No. 42, at 15.) The court agrees. The Complaint contains essentially no allegations regarding Dr. La's involvement in the treatment of the plaintiff's hip pain, beyond an assertion that the plaintiff began complaining about hip pain in December 2015, in response to which Nurse Practitioner Shao Ma assured him "it wasn't anything to worry about" and prescribed ibuprofen and naproxen. (Doc. No. 1, at 87.) Dr. La and Nurse Practitioner Ma ordered hydrocortisone shots when the pain became "unbearable." (*Id.*) The magistrate judge did not err in concluding that these allegations fail to state a deliberate indifference claim against Dr. La based on a failure to adequately address the plaintiff's hip pain.[5]

The third claim, upon which the plaintiff's hopes are now pinned, has effectively been ignored by the defendants and the magistrate judge and, to be fair, is not well articulated in the Complaint. This claim is based on Dr. La's deliberate overtreatment of the plaintiff with steroids, despite allegedly knowing of the risks entailed by the massive over-prescription of steroids—in the form of topical creams, oral pills, and injections—for nearly a year. Regarding this claim, the plaintiff specifically alleges that he was "abused with powerful dangerous steroids," purportedly to control his skin itching. (Doc. No. 1, at 17.) He claims that Dr. La actually knew that the over-prescription of steroids was dangerous: "Nurse Dorene . . . and all of the nurses on the day shift staff told [Dr. La] that all of the steroids he was giving me were very dangerous and detrimental to my body and health." (*Id.* at 81.) He claims that "[t]here was an attitude of total disregard for me or my health when Dr. Hau La . . . chose to use all these different steroids on me" (*id.* at 92) and, more specifically, that Dr. La "totally disregarded the repercussions or effects of these steroids

---

[5] The absence of any additional allegations may be explained by the defendants' assertion that Dr. La's employment at the prison where the plaintiff is confined terminated on February 2, 2016, shortly after the plaintiff began complaining about hip pain.

would have on me," despite being warned by the entire nursing staff numerous times. (*Id.* at 93.)

The plaintiff learned around November 2015, when he saw the skin specialist who diagnosed scabies and ordered treatment, that he had been given and taken enough "steroid dose packs, hydrocortisone shots and steroid topical ointment to kill anything on this planet." (Doc. No. 1, at 75.) It was shortly after that date that he began complaining about hip pain, but he was not diagnosed with possible avascular necrosis until around July 2016. (X-Ray Report, Doc. No. 1, at 62; *see also* 9/12/2016 MRI Report, Doc. No. 1, at 63.) He did not learn until January 2017 that the over-prescription of steroids likely caused the avascular necrosis in his hip. (Doc. No. 1, at 79 ("My current situation or diagnosis of Stage 4 vascular necrosis is without a doubt caused by the direct use of excessive amounts of steroids and is visible on the MRI. Dr. Ronald Baker, my orthopedic surgeon has clearly stated and noted in my medical charts to this direct cause of the vascular necrosis to my [femur] ball head and hip areas."); 1/10/2017 Orthopedic Consultation note, *id.* at 65 ("Mr. He[a]rd is a 54-year-old male with a history of high dose steroids. . . .").)

The defendants argue in their Motion to Dismiss that the plaintiff's claims against Dr. La are barred by the statute of limitations, that the Complaint fails to state a claim of deliberate indifference against him (as distinct from mere medical negligence), and that the plaintiff failed to comply with the pre-suit notice and other requirements imposed by the THCLA. The defendants do not specifically address the plaintiff's allegations regarding the over-prescription of steroids and his discovery in January 2017 that the abuse of steroids caused the avascular necrosis in his hip joint, except with an oblique reference to Dr. La's improper treatment of his scabies. (*See* Doc. No. 38, at 8–9 ("[T]he Plaintiff's claims against Dr. La all stem from this alleged improper treatment of his scabies. There are no specific allegations against Dr. La for any treatment related to the Plaintiff's right hip." (internal citations omitted)).) As indicated above, the magistrate judge

only addressed the question of whether the Complaint adequately alleged facts to support a claim that "Dr. La was deliberately indifferent to Plaintiff's serious medical need of a right hip replacement." (Doc. No. 52, at 14.)

The court finds, for purposes of 28 U.S.C. § 1915(e) and Rule 12(b)(6), that the Complaint adequately alleges facts supporting a claim of deliberate indifference based on the over-prescription of steroids that is not barred by the statute of limitations. First, the Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A deliberate indifference claim has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). The objective component requires the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 104. "As the Supreme Court explained in *Farmer*, 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer*, 511 U.S. at 834). The subjective component typically requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown*, 207 F.3d at 867 (citing *Farmer*, 511 U.S. at 834). This subjective component "should be determined in light of the prison authorities' current attitudes and conduct." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "Knowledge of the asserted serious needs or of

circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

Typically, a deliberate indifference claim against a prison doctor involves the doctor's failure to treat a serious medical condition, such as, for example, Dr. La's failure or refusal to treat the plaintiff for scabies. Here, apart from his failure to treat the plaintiff's scabies, Dr. La prescribed steroids completely unnecessarily, allegedly knowing both that they were not necessary and that they posed a serious risk of harm to the plaintiff. In other words, although the plaintiff's deliberate-indifference claim is atypical, the plaintiff's allegations, if true, show that he suffered objectively serious health risks arising from Dr. La's actions and that Dr. La was subjectively aware of those risks. The plaintiff argues:

> [T]he central injury that forms the basis of Plaintiff's suit is the injury to his hip. While the scabies and steroids bear a relationship in the narrative, . . . Plaintiff's Complaint describes La's administration of steroids as actions that were taken in lieu of actual scabies treatment in an effort to hide the existence of an outbreak from the prison population—actions previously found by this Court to state a claim for deliberate indifference. The actual injury (the hip) that resulted from this deliberate indifference did not manifest until a later time and, until his consult with Dr. Baker, Plaintiff did not and could not know it had been caused by the Defendants' administration of steroids.

(Doc. No. 45, at 9–10.)

The plaintiff objects to the R&R on the basis that it "misconstrues the Complaint as alleging merely that Defendants 'mishandled' Plaintiff, when in fact the Complaint 'alleges that Dr. La deliberately and intentionally *mistreated* Mr. Heard by concealing from him the actual nature of his medical condition and by retaliating against those who told Mr. Heard the truth." (Doc. No. 54, at 1 (quoting Doc. No. 45, at 2).) The plaintiff alleges, repeatedly, that Dr. La's inappropriately treating him with steroids—including steroid creams, oral steroids, and hydrocortisone injections in the plaintiff's hip—amounted to deliberate indifference to his serious medical needs and not

mere medical negligence. At this juncture, particularly in light of the defendants' failure to address this issue directly, the court finds that the Complaint states a colorable claim of deliberate indifference against Dr. La, based on the gross over-prescription of steroids.

The court further finds, at least for purposes of Rule 12(b)(6), that the claim is not barred by the statute of limitations. As the Sixth Circuit has explained, a statute of limitations for a tort claim generally begins to run at the time of the event that causes the injury. *See, e.g.*, *Hicks v. Hines Inc.*, 826 F.2d 1543, 1544 (6th Cir. 1987) ("The general rule is that a tort cause of action accrues when there has been a violation of legally protected interests."). Alternatively, however, in a so-called "latent injury case," "if the injured person sustains an injury which cannot itself reasonably be discovered, or the cause of which cannot reasonably be discovered, until sometime following the tortious event and the running of the statute of limitations, courts often apply the 'discovery' rule, tolling the running of the statute of limitations to the date by which the plaintiff reasonably should have discovered both cause and injury." *Id.* In this case, although the over-prescribing of steroids by Dr. La took place from January 2015 through January or February 2016, and the plaintiff was diagnosed with avascular necrosis in the summer or fall of 2016, the plaintiff did not learn, and had no reason to learn, of the causal connection between these events until January 2017, within the limitations period.

On some occasions, an event may cause both an obvious injury and a latent injury that is not discovered until later: "The traumatic event/latent manifestation case occurs when a noticeable, traumatic occurrence causes both obvious and latent injuries. Although the ultimate gravity of the harm may not be manifest, the plaintiff recognizes both the injury and its cause." *Id.* at 1544–45. In such a case,

> [i]f greater than *de minimis* harm is discernable at the time of the tortious event, then the "time of the event" rule applies, plaintiff's cause of action accrues, and the

statute of limitations begins to run. Even if the plaintiff later discovers that his injuries are more serious than he originally thought, his cause of action nevertheless accrues on the earlier date, the date he realized that he had sustained harm from the tortious act.

*Id.* at 1544 (citing *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 229 (5th Cir.1984)).

The defendants do not actually argue that this principle applies to this case, and the court finds, at least for purposes of Rule 12(b)(6), that it does not. Although the plaintiff arguably suffered more than *de minimis* injury as a result of Dr. La's refusal to treat his scabies appropriately, the inadequate treatment of scabies and the allegedly flagrant misuse of steroids are two separate—though related—events. The plaintiff had no reason to connect the administration of steroids with his hip pain until January 2017. Under the discovery rule, his claim did not accrue until then, and, because he filed suit on September 12, 2017, he complied with the statute of limitations.

In sum, the court will dismiss the § 1983 claims related to scabies and the plaintiff's hip-joint pain, but the § 1983 claim premised upon Dr. La's gross over-administration of steroids, which resulted in the plaintiff's avascular necrosis, will be permitted to proceed.

### (2)     *The Application of the THCLA*

The defendants also seek dismissal of the claims against Dr. La based, in part, on the plaintiff's failure to comply with procedural requirements imposed by the THCLA. The magistrate judge did not address this argument on its merits, finding only that, assuming the plaintiff had complied with the THCLA's notice requirements, the Complaint failed to state a claim of deliberate indifference related to the plaintiff's hip pain and should therefore be dismissed with prejudice in its entirety. Dismissal of the deliberate-indifference claims, however, would not necessarily require dismissal of state-law claims over which the court has supplemental jurisdiction. And any dismissal of supplemental state-law claims under 28 U.S.C. § 1367(c)(3),

based on the court's dismissal of the claims over which it had original jurisdiction, should have been without prejudice. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). In any event, this court's conclusion that one deliberate-indifference claim survives the Motion to Dismiss means that dismissal of the supplemental state law claims under § 1367(c)(3) would no longer be appropriate. The court will therefore consider the defendants' motion to dismiss the medical malpractice claim for failure to comply with the THCLA.

The THCLA requires that, "[i]n any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint." Tenn. Code Ann. § 29-26-122(a). The certificate of good faith must state that the plaintiff or plaintiff's counsel has consulted with a competent expert who believes, based on the available medical records, that there is a good faith basis to maintain the action. *Id.* The failure to provide a certificate of good faith "shall, upon motion, make the action subject to dismissal with prejudice." *Id.* § 29-26-122(c). Further, a person "asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability." Tenn. Code Ann. § 29-26-121(a)(1). A complaint for health care liability must state whether the party has complied with the 60–day notice provision and must provide documentation of the notice. *Id.* § 29-26-121(b).

The Sixth Circuit has held that the notice and certification requirements are mandatory, even in cases brought in federal court. *Reed v. Speck*, 508 F. App'x 415, 423 (6th Cir. 2012) (affirming dismissal of medical malpractice claim on the basis that the plaintiffs failed to show extraordinary cause to excuse compliance with the notice and certification requirements of the

THCLA). Although the Sixth Circuit has not addressed the issue,[6] district courts within this state have concluded that *pro se* prisoners are required to comply with THCLA before bringing suit for medical malpractice. *See, e.g.*, *Tankesly v. Corr. Corp. of Am.*, No. 3:14-cv-0911, 2017 WL 3034654, at *23 (M.D. Tenn. July 18, 2017) (collecting cases).

It is undisputed that plaintiff did not file a certificate of good faith with the Complaint or provide any explanation for his failure to do so, nor does the Complaint certify compliance with § 29-26-121(a)(1) or provide documentation of such compliance. Thus, insofar as the Complaint may be construed as asserting state-law medical malpractice claims against Dr. La, such claims are subject to dismissal based on the plaintiff's failure to comply with the THCLA.[7] *Accord White v. Washington Cty., Tenn.*, 85 F. Supp. 955, 960 (E.D. Tenn. 2015) (dismissing state healthcare liability claims with prejudice based on failure to comply with the statutory requirements).

To the extent the defendants' Motion to Dismiss may be construed as seeking dismissal of the § 1983 claims based on the plaintiff's failure to comply with the THCLA's notice and certification requirements, the court rejects that argument. The THCLA purports to apply broadly to any "health care liability action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1). This statement is facially broad enough to encompass a deliberate indifference claim under § 1983 based on the failure to provide necessary health care. However, the Sixth Circuit has never construed the state statute to apply so broadly as to limit a litigant's ability to pursue claims

---

[6] *Reed* involved injuries to an incarcerated person, but the suit was brought by the prisoner's family after his death.

[7] This conclusion does not foreclose the plaintiff's ability to file a formal motion to amend his pleading to allege extraordinary cause excusing compliance with the THCLA.

based on the violation of his constitutional rights. *See, e.g., Reed*, 508 F. App'x at 423–24, 419–21 (6th Cir. 2012) (affirming dismissal of medical malpractice claim for failure to comply with notice and certification requirements of the THCLA, but addressing deliberate indifference claims separately, on their merits). This court declines to do so now. While the plaintiff's failure to comply with the THCLA requires dismissal of his state medical malpractice claims against Dr. La, it does not serve to bar his § 1983 claims.

### (3) The Deliberate Indifference Claim Against Centurion

As the magistrate judges states in the R&R, Centurion "is a private entity that contracts with the State to provide medical care to prison inmates. A private entity that contracts with the State to perform a traditional state function, such as providing medical services to prison inmates, acts under color of state law and may be sued under § 1983." (Doc. No. 52, at 15 (citing *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)).) Thus, Centurion of Tennessee, LLC is amenable to suit under § 1983. (*Id.*)

The magistrate judge found that, although the Complaint alleges that *Dr. Limbird*, who is not a Centurion employee, had a policy or practice of denying hip-replacement surgery to prisoners, the Complaint does not allege facts suggesting that *Centurion* has such a policy. Instead, the factual allegations in the Complaint show that the plaintiff has "received repeated consults with specialists Dr. Baker and Dr. Limbird, received numerous xrays and MRIs, underwent a hip decompression surgery, and had repeated and continuous care with Dr. Sidberry." (*Id.* at 16.)

The court agrees. Any claim against Centurion related to the failure to diagnose and treat the plaintiff's scabies in a timely fashion is time-barred, for the same reason the parallel claim against Dr. La is time-barred. There are no allegations that Centurion's policy played any role in Dr. La's over-prescription of steroids. The only remaining claim against Centurion hinges entirely

on Centurion's refusal to send the plaintiff for a "third unbiased opinion" (Doc. No. 1, at 5) as to whether he needs an immediate hip replacement. Centurion has disregarded the request of the plaintiff's treating physician, Dr. Sidberry, for another opinion and decided instead to abide by the opinion of orthopedic specialist Dr. Limbird that the plaintiff does not have an immediate medical need for a hip replacement. The court finds that the plaintiff does not have a constitutional right to a second or third medical opinion, and any allegations that Centurion has conspired with Dr. Limbird to deny him necessary medical treatment are entirely conclusory and unsupported.[8]

Although the plaintiff may disagree with the course of treatment he has received, the law is clear that, while an inmate has a right to appropriate medical care, he does not have a right to the medical care of his choosing. Thus, "'[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.'" *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). "[A] mere difference of opinion between [a prisoner] and medical personnel regarding his treatment" does not give rise to a claim under the Eighth Amendment. *McFarland v. Austin*, 196 F. App'x 410, 411 (6th Cir. 2006) (citing *Westlake*, 537 F.2d at 860 n.5).

The allegations in the Complaint, even if true, simply do not establish that Centurion has a policy or procedure of denying necessary medical treatment. The defendant's Motion to Dismiss the claims against Centurion will therefore be granted.

---

[8] In granting Dr. Limbird's Motion for Summary Judgment, the court accepted as true his uncontested declaration that replacement of the plaintiff's right hip joint was not medically necessary. (Doc. No. 17-1 ¶ 8; Doc. No. 51, at 6.) Accordingly, the court is not compelled to accept as true the plaintiff's allegations that Dr. Limbird refused to perform the surgery because he is biased against him and "sympathetic toward Centurion's profit margins." (Doc. No. 1, at 5.)

**IV.    Conclusion**

For the reasons set forth herein, the court finds the plaintiff's Objections to the R&R to be partially meritorious. The court will accept in part and reject in part the R&R, and will grant in part and deny in part the defendants' Motion to Dismiss. An appropriate Order is filed herewith.

ENTER this 6th day of December 2018.

ALETA A. TRAUGER
United States District Judge